IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON SHIRLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 6:17-cv-01306-CL

**OPINION & ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Jason Shirley seeks judicial review of the final decision of the Commissioner of the Social Security Administrations denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The parties have consented to magistrate jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1). For the reasons below, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

## BACKGROUND

Plaintiff was born in 1986 and was 23 years old when he alleges his disability began. Tr. 421. Plaintiff completed the twelfth grade (Tr. 202), and has past work as an administrative clerk, shuttle driver, plastic line operator, and oil change pitman. Tr. 420, 657. Plaintiff alleges disability due to immunoglobulin nephropathy, immune deficiency, rheumatoid arthritis, stage one kidney failure, chronic pain disorder, fibromyalgia, migraines, and posttraumatic stress disorder or generalized anxiety disorder. Tr. 201, 406.

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for social security income on July 20, 2010. Tr. 24. In both applications, Plaintiff alleged disability beginning June 30, 2009. Tr. 24. Both applications were initially denied and upon reconsideration, Plaintiff filed a written request for hearing. Tr. 131. A hearing was held before an administrative law judge (ALJ) and a decision denying benefits was issued on March 26, 2012. Tr. 21-36. The Appeals Council affirmed the decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff then appealed and this Court reversed the decision and remanded the claim for further administrative proceedings. Tr. 517-19.

On August 12, 2016, a second hearing was held before an ALJ. Tr. 431-94. Plaintiff, witness Michael Shirley, and a vocational expert all testified at the hearing. Tr. 431-94. The ALJ issued a decision again denying benefits on May 10, 2017. Tr. 403-22. Plaintiff now seeks review of the ALJ's 2017 decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e);

> 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and has not engaged in substantial gainful activity since the alleged onset date of June 30, 2009. Tr. 406.

2. Plaintiff has the following severe impairments: chronic pain syndrome of unclear etiology/pain disorder, fibromyalgia, migraines, immunoglobulin nephropathy, and posttraumatic stress disorder/generalized anxiety disorder. Tr. 406.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 407.

    a. Plaintiff has the RFC to perform sedentary work, meaning he can lift ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours in an eight-hour workday in one hour increments and then change positions to standing or walking in increments for no more than fifteen minutes, while remaining on task. He can stand and walk for a total of two hours in an eight-hour workday. He should never climb ladders, ropes, and scaffolds. He can climb ramps and stairs less than occasionally. He can stoop, kneel, and crouch less than occasionally. He should never crawl. He should have no more than frequent exposure to hazards, such as unprotected heights and dangerous machinery. He should have no more than frequent exposure to high impact vibrations. He can perform simple routine tasks. He should have no more than superficial contact with the public but incidental interaction is tolerated. He should have no contact with public crowds, which is approximately twenty people or more. He should have no fast-paced production demands, such as no timed demands. Tr. 408-09.

4. Plaintiff is unable to perform any past relevant work. Tr. 420.

5. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 421.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 422.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means

'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by 1) improperly rejecting Plaintiff's symptom testimony; 2) improperly evaluating lay witness testimony; and 3) improperly evaluating the medical opinion evidence. The Court agrees that the ALJ erred in all three ways.

### I. The ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.*; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Where an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be disabled were his testimony credited, the court "'will not remand solely to

allow the ALJ to make specific findings regarding that testimony.'" *Lester*, 81 F.3d at 834 (quoting *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)). Instead, the testimony is "credited as a matter of law." *Id.*

Here, the ALJ found there was "considerable evidence throughout the record that weakens the reliability of the claimant's allegations regarding the severity of his symptoms, functional limitations, and inability to work." Tr. 415. The ALJ considered the lack of objective evidence consistent with his claims to be the "primary factor undermining the claimant's allegations." Tr. 415. The ALJ goes so far as to say that "[n]o doctor has provided a diagnosis that would correlate to the degree of pain reported by the claimant." Tr. 415. The Court finds this conclusion to be inconsistent with the record and the ALJ's own findings. Evidence in the record shows that Plaintiff has been diagnosed with both fibromyalgia and Chronic Pain Syndrom, both of which support Plaintiff's subjective symptom testimony of chronic and severe pain. The ALJ found that fibromyalgia, migraines, and Chronic Pain Syndrome were all verified severe impairments. Tr. 406, 797-98, 808. A lack of objective findings to identify the etiology of Plaintiff's pain is not a clear and convincing reason to find that Plaintiff's diagnosis of chronic pain disorder or fibromyalgia could not produce the level of disabling pain that he testified to.

Moreover, the Ninth Circuit has held that an ALJ may not reject a claimant's testimony about pain solely because it is not fully corroborated by objective medical evidence. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Instead, "[t]o find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g. reputation for dishonesty), or conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Id.* There are no findings in the record that indicate Plaintiff has a history of being untruthful and Plaintiff has consistently reported the same levels of pain

and functional limitations to his doctors, family, and work supervisor as he has to the Social Security Administration. Tr. 716, 787, 791.

As to Plaintiff's subjective testimony regarding his mental limitations, the ALJ rejected his claims of disabling mental limitations because he had "not engaged in consistent counseling or therapy" and was resistant to suggestions that he start therapy, which the ALJ found to suggest his symptoms were not as great as alleged. Tr. 415. The Ninth Circuit has criticized the use of these reasons to reject claimant testimony. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("Indeed, we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because "'it is a questionable practice to chastise one with a mental impairments for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (criticizing an adverse credibility finding for lack of treatment due to a lack of funds). Evidence in the record suggests that Plaintiff's lack of consistent mental health treatment is due in part by his anxiety, which prevents him from handling his emotions caused by trauma therapy or develop a trusting relationship with a therapist (Tr. 470, 756), and because he could not afford therapy co-pays (Tr. 807). The ALJ erred in rejecting Plaintiff's testimony regarding his mental limitations without considering these other reasons for why Plaintiff had not engaged in consistent mental health therapy.

### II. The ALJ erred in evaluating the lay witness testimony of both Plaintiff's father and former employer.

Lay testimony as to a plaintiff's symptoms is competent evidence which the ALJ must consider. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014), *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Ninth Circuit has held that "friends and family members in a

position to observe a claimant's symptoms and daily activities are competent to testify as to [a claimant's] condition" and can "make independent observations of the claimant's pain and other symptoms." *Dodrill*, 12 F.3d at 918-19 (9th Cir. 1993). If the ALJ disregards such testimony, the ALJ "must give reasons that are germane to each witness." *Id.*; *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding inconsistency with medical evidence to be a germane reason to discredit a lay witness's statements); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding lay testimony that it is substantially similar to a claimant's validly discredited allegations to be one germane reason for discrediting the lay testimony).

Here, the ALJ erred in rejecting lay witness statements for reasons that are not germane. First, the ALJ considered the testimony of Mike Shirley, Plaintiff's father, but seemed to give it little weight because it was based on the claimant's subjective reports of pain and anxiety and inconsistent with the objective evidence in the record. Tr. 417. However, much of Mr. Shirley's testimony appears to be based on Mr. Shirley's own observations of his son's activities. Mr. Shirley has always lived with Plaintiff and testified that he observed his son spend most of his time in bed, doing chores for no more than a half hour at a time, and take days to recover after doing such chores. Tr. 416; 476-79. The ALJ's reasoning for rejecting Mr. Shirley's testimony is not germane because it fails to credit Mr. Shirley's independent observations.

Second, the ALJ considered the statement provided by Trace Caraway, Plaintiff's former employer, but again gave his statement little weight because it was "based on the claimant's reports of pain and limitations, which were found to be unreliable." Tr. 417. Many of Mr. Caraway's statements related to his own observations, including that other employees expressed concern to him about Plaintiff's health; that Plaintiff would use the production line table to hold up his body; that Plaintiff required more sick days than other employees; that he observed

Plaintiff had bruising; and that Plaintiff had difficulty walking. Tr. 417. Although Mr. Caraway would have had to rely on Plaintiff's self-report about his exact level of pain, this does not discount his own observations.

Failing to credit the independent observations of lay witnesses is not a harmless error because Mr. Shirley's and Mr. Caraway's observations support Plaintiff's testimony about the severity and functional effects of his symptoms.

### III. The ALJ failed to properly credit the opinions of Dr. Woods and Dr. Power, both treating physicians.

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* If the treating physician's opinion is supported by medically acceptable clinical findings and is consistent with substantial evidence in the record, controlling weight is given. *Id.* Treating providers are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Nonetheless, an ALJ may discount a treating doctor's uncontroverted opinion by providing "clear and convincing" reasons supported by the record. *Holohan v. Massanari*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If the treating doctor's opinion is in dispute, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). When the ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, that opinion is credited as a

matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)).

Dr. Woods was Plaintiff's treating physician from October 2010 to September 2011. Tr. 418. He reported that Plaintiff had to lie down during the day and had pain in his elbows, hands, knees, back, and hips. Tr. 418. He stated that Plaintiff had been diagnosed with IgA nephropathy, pain disorder, and migraines, and opined that Plaintiff's IgA nephropathy may be the cause of Plaintiff's pain. Tr. 418. He further opined that if Plaintiff were to attempt to work a 40-hour workweek he would miss four or more days per month. Tr. 332. The ALJ gave little weight to Dr. Woods' opinion because he had "only been treating the claimant for about a year when he offered this opinion and is not a specialist." Tr. 418. The ALJ further concluded that "[o]utside of the claimant's own reports, there is no basis for the limitations opined by Dr. Woods." Tr. 419.

Although there is a lack of objective findings in the record that identify the etiology of Plaintiff's pain, there is ample evidence that Plaintiff has been diagnosed with fibromyalgia, migraines, and a chronic pain disorder. The record does not contain a contrary opinion from a specialist or someone with a longer treating history than Dr. Woods. The ALJ's reasoning for discounting Dr. Woods' opinion is not clear and convincing because there is no requirement that a doctor be a specialist or have a long treatment history with a patient for the doctor's opinion to be given weight. Moreover, the ALJ gave "great weight" to the opinion of Dr. French and other agency doctors who were also not specialists and only examined Plaintiff once or not at all. The ALJ's reasoning that there was no basis for Dr. Woods' opinion other Plaintiff's own reports is also unconvincing. The Court is unaware of any imagining or laboratory test that can measure the severity of an individual's pain. Doctors treating patients with fibromyalgia or a chronic pain

disorder must use their training, experience, and observations of the patient to ascertain reasoned medical opinions, and although these evaluations may appear subjective, they should not be rejected simply because they depend in part on the patient's self-report. Further, as discussed in the previous sections, the ALJ erred in finding Plaintiff's symptom testimony not credible. Evidence in the record shows that Plaintiff has consistently reported the same symptoms to his treating doctors, family, friends, and supervisor at work.

Dr. Power was Plaintiff's treating physician in 2016. Tr. 419. She stated that Plaintiff had been diagnosed with fibromyalgia and generalized anxiety disorder. Tr. 419. She confirmed that Plaintiff's symptoms included knee, ankle, and elbow pain and stiffness, and social and generalized anxiety. Tr. 419. She opined that Plaintiff would need to lie down during the day and that his mental health issues could aggravate his fibromyalgia if not fully controlled. Tr. 419. She further opined that Plaintiff would miss one day of work per month for physical therapy. Tr. 419. The ALJ gave significant weight to the "bulk" of Dr. Power's opinion, "as it [was] consistent with the lack of objective evidence showing any abnormalities," but gave no weight to her opinion that Plaintiff would miss a day of work for physical therapy because Plaintiff "had not attended physical therapy and it is possible to go to physical therapy without missing work." Tr. 419-20.

The Court agrees that significant weight should have been given to Dr. Power's medical opinion, but disagrees with the ALJ's finding that Dr. Power's opinion is consistent with a lack of objective evidence showing any abnormalities. Dr. Power performed a physical examination of Plaintiff that confirmed a diagnosis of fibromyalgia. Tr. 418. Moreover, Dr. Power's opinion of Plaintiff's symptoms and his need to lie down is consistent with the opinion provided by Dr. Woods. The ALJ also erred in giving no weight to Dr. Power's opinion that Plaintiff would miss

work for physical therapy. An ALJ may not make speculative inferences from medical reports or reject a treating physician's opinion based on speculation or lay opinion. *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ did not know how long each physical therapy session would last, how intensive each session would be, or whether physical therapy would impact Plaintiff's functioning for the remainder of the day and interfere with his ability to work. Therefore, the ALJ erred in rejecting Dr. Power's opinion without first clarifying why Dr. Power felt that physical therapy would require Plaintiff to miss a day of work.

The ALJ's errors in dismissing both Dr. Woods' and Dr. Power's opinions about how much work Plaintiff was likely to miss per month were not harmless. The vocational expert testified that employers were tolerating between eight to ten missed workdays per year in 2016. Tr. 490. If Plaintiff is likely to miss one to four days of work per month, as opined by Dr. Wood and Dr. Power, he would be over the limit tolerated by most employers.

## REMAND

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)), but "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," *id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Ninth Circuit case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir.2014) (discussing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir.2014)). The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient

reasons for rejecting evidence. *Id.* If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler,* 775 F.3d at 1101. In conducting this review, the district court must consider whether there are "inconsistencies between [the claimant's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that evidence casts into serious doubt" the claimant's claim to be disabled, *Burrell,* 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.; Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016).

On this record, the Court believes no useful purpose would be served by remanding the case for further proceedings. As discussed above, the Court is properly convinced that the ALJ failed to provide substantial evidence to support his decision discrediting Plaintiff's subjective symptom testimony and rejecting portions of Dr. Wood's and Dr. Power's uncontradicted medical opinions. Moreover, despite the Commissioner's arguments to the contrary, the record is fully developed, and no meaningful purpose would be served by remanding for additional proceedings.

A claimant who is unable to perform past relevant work as well as any other work that exists in significant numbers in the national economy, after taking into account the claimant's RFC and age, education, and work experience, is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). Plaintiff meets these criteria, is therefore disabled, and remanding this case for further administrative proceedings would serve no useful purpose; "rather, it would merely delay the award of

benefits." *Dominguez*, 808 F.3d at 407. Therefore, the Commissioner's decision is reversed and remanded for the payment of benefits.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this /0 day of December, 2018.

_____
MARK D. CLARKE
United States Magistrate Judge